1 | MICHAEL J. MANDELBROT, SBN172626
Attorney At Law
2 | 505 A San Marin Drive, Suite 200
Novato, CA  94945
3 | Telephone: (800) 970-3878

4 | Attorney for Beneficiaries of the J.T. Thorpe, Inc. Settlement Trust

**FILED**

**JUN 02 2014**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

5

6

7 | UNITED STATES BANKRUPTCY COURT

8 | CENTRAL DISTRICT OF CALIFORNIA

9 | LOS ANGELES DIVISION

10 | In re: | Chapter 11

11 | J.T. THORPE, INC. | Case No. 02-14216-BB

12 | and | Adversary Case No. 2:12-ap-02182-BB

13 | THORPE INSULATION COMPANY, | Case No. 07-18271-BB (Case Closed)
(Jointly Administered with Case No. 07-200016-BB)

14 | Debtors.

15 | | Adversary Case No. 2:12-ap-02183-BB

16

17 | J.T. THORPE SETTLEMENT TRUST | **OBJECTION - EIGHTH ANNUAL REPORT AND ACCOUNTING, AUDITED FINANCIAL STATEMENTS, AND CLAIM REPORT; DECLARATION OF MICHAEL J. MANDELBROT; ATTACHED EXHIBITS A-P, inclusive**

18 | and

19 | THORPE INSULATION COMPANY ASBESTOS SETTLEMENT TRUST,

20 | | Date: June 4, 2014

21 | Plaintiffs, | Time: 2:00 p.m.
Crtrm: 1475

22 | v. | Place: 255 E. Temple St., 14th Floor
Los Angeles, CA 90012

23 | MICHAEL J. MANDELBROT and THE
MANDELBROT LAW FIRM, | Judge: Honorable Sheri Bluebond

24

25 | Defendants.

26

27 | The Beneficiaries of the J.T. Thorpe, Inc. Settlement Trust by and through their counsel, Michael

28 | J. Mandelbrot and the Mandelbrot Law Firm, hereby **object** to the Eighth Annual Report of Accounting,

**BY FAX**

Audited Financial Statement, and Claim Report due to criminal bankruptcy fraud, misrepresentation of

material facts, conflicts of interest, and misappropriation of funds, perjury, and bad faith.

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE:**

The Beneficiaries of the J.T. Thorpe, Inc. Settlement Trust and Michael J. Mandelbrot, Esq.,

("Mandelbrot") hereby submit this Objection to the Eighth Annual Report and Accounting ("Annual

Report") covering Trust activities occurring from January 1, 2013, to and including December 31,

2013,("Accounting Period"), and certain activities (both specified and unspecified) that took place outside

the accounting period. The factual statements in this Objection to the Annual Report are supported by the

Declaration of Michael J. Mandelbrot, Claimants' Representative for hundreds of beneficiaries of the J.T.

Thorpe, Inc. Settlement Trust, and the Exhibits attached hereto.  By my signature below, I certify that the

exhibits attached hereto are true and correct copies of the documents presented and if called as a witness I

could testify to the authenticity thereof.

**I.  GENERAL OBJECTIONS**

1.    The Eighth Annual Report contains criminal bankruptcy fraud and misrepresentations of

material facts due to conflicts of interest, including but not limited to ¶¶2, 3, 4, 16, 19, 20, 21, 22, 23, 26,

27, 30 and Exhibit C.

Conflicts of interest for the Managing Trustee, Futures Representative, Trust Advisory Committee

Members and their respective attorneys have existed throughout the Accounting Period and have existed

since the Trust's inception due to the criminal and unethical acts of former asbestos defense lawyers from

the now bankrupt Brobeck, Phegler & Harrison LLP (hereinafter "Brobeck") Stephen Snyder (the current

Managing Trustee of the J.T. Thorpe, Inc. Trust), Gary Fergus (attorney for the Futures Representative of

the J.T. Thorpe, Inc. Trust since at least 2002), Charles LaGrave (fraudulently called both inside and

outside counsel to the J.T. Thorpe, Inc. Trust since 2004 depending on circumstances), and Benjamin

Smith (current attorney to the J.T. Thorpe, Inc. Trust and known perjurer). See **Exhibit A**, *Declaration of*

*Michael J. Mandelbrot* , dated March 12, 2014, ¶¶ 3-5, inclusive; See *also*, **Exhibits 5-9,** attached to the

*Declaration of Michael J. Mandelbrot*, Attached as **Exhibit A.** See *also*, **Exhibit B**, *Declaration of Gary*

*Fergus* dated March 20, 2014, ¶¶ 2,4. Each is not a "disinterested" party, and has an interest adverse to

the estate and violated various ethical codes relating to the representation of the adverse interests (see

1   below). Each also participated in the criminal misappropriation of $35,542,397 from the Western

2   Asbestos Settlement Trust to Brobeck and $16,500,000 from the J.T. Thorpe, Inc. Trust to Trust

3   Fiduciaries (Brayton and McClain) and at least $22,700,000 from the Thorpe Insulation Trust to those

4   with clearly adverse interests. See **Exhibit C,** *Annual Reports of Western Asbestos (page 1), J.T. Thorpe,*

5   *Inc (page 2), and Thorpe Insulation (page 3) detailing the misappropriation of funds.*

6         In addition, Chairman of the Trust Advisory Committee for the J.T. Thorpe, Inc. Trust since its

7   inception Alan Brayton and his 'sidekick' Trust Advisory Committee member David McClain have

8   operated since the Trust's inception with a conflict of interest. Each represents hundreds of claimants and

9   has also criminally and fraudulently misappropriated at least $10,000,000 from beneficiaries as "Special

10   Bonuses" from the J.T. Thorpe, Inc. Trust, Western Asbestos Trust and Thorpe Insulation Trusts. See

11   **Exhibit C,** *Annual Reports of Western Asbestos (page 1), J.T. Thorpe, Inc (page 2), and Thorpe*

12   *Insulation (page 3) detailing the misappropriation of funds.*

13         In addition, the Declaration of Benjamin Smith to the Eighth Annual Report of Accounting

14   contains extensive perjury and misrepresentations of material facts and should be stricken. Benjamin

15   Smith, who prepared the report (now employed by Snyder's other former firm Morgan, Lewis and

16   Bockius), is a known perjurer, perpetrator of fraud, and clearly has interests adverse to the Beneficiaries.

17   No. 20 to the Eighth Annual Report should be stricken. See **Exhibit A,** *Declaration of Michael J.*

18   *Mandelbrot,* dated March 12, 2014, ¶ 16, as well as **Exhibits 12 and 13,** attached thereto.

19                              II. **SPECIFIC OBJECTIONS**

20         **1.    OBJECTION TO NO. 2:** **Appointment of Trustees: Fraud, Bad Faith, Conflicts of**

21   **Interest. Objection: Fraud, Bad Faith, Conflicts of Interest**

22         The March 23, 2006 Order Approving the Appointment of Trustees for the J.T. Thorpe, Inc.

23   Settlement Trust should be considered null and void due to fraud and conflicts of interest. Since the

24   confirmation of the J.T. Thorpe, Inc. Trust, the Hon. Charles Renfrew (Ret.) has employed former

25   Brobeck attorney Gary Fergus as his attorney. Fergus, as a Brobeck attorney, had litigated against many

26   present and future claimants of the J.T. Thorpe, Inc. Settlement Trust .**Exhibit B,** *Declaration of Gary*

27   *Fergus* dated March 20, 2014, ¶ 2,4. Fergus violated various provisions of Rule 3-310 of California Rules

28   of Professional Conduct by accepting the position as attorney for the Futures Representative. Renfrew

violated the provision by even offering Fergus the role as his attorney. As such, the appointment of

Stephen M. Snyder as Managing Trustee by Fergus/Renfrew was fraud and due to the representation of

adverse interests. Stephen M. Snyder, the Managing Trustee of the J.T. Thorpe, Inc. Trust since

confirmation, is a former co-worker of Fergus and an asbestos defense attorney, who also violated Rule 3-

310 by accepting employment with interests adverse to past, present and future beneficiaries of the Trust.

Both Fergus and Snyder spent decades litigating *against* the present and future claimants of the Trust and

clearly have interests adverse to the J.T. Thorpe, Inc. Trust. The text of Rule 3-310, states in part:

California Rules of Professional Conduct: **Rule 3-310 Avoiding the Representation of Adverse Interests**
. . . .

(B) A member shall **not accept or continue representation** of a client without providing written disclosure to the client where:
The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or
*The member knows or reasonably should know that:*
*the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter;* and
the previous relationship would substantially affect the member's representation; or
*The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or*
*The member has or had a legal, business, financial, or professional interest in the subject matter of the representation.*

(C) A member **shall not, without the informed written consent of each client:**
Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or
Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or
*Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.*

(E) A member **shall not, without the informed written consent of the client or former client,** *accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.*

1      (F) A **member shall not accept compensation** for representing a

2  client from one other than the client unless:

       *There is no interference with the member's independence of*

3      *professional judgment or with the client-lawyer relationship*; and

4  Managing Trustee Snyder clearly had a bias and conflict against both plaintiff asbestos lawyers, and past,

5  present and future victims of asbestos disease. Snyder also had interests adverse to past, present and future

6  claimants of the J.T. Thorpe, Inc. Settlement Trust. See **Exhibit D,** *Biography of Managing Trustee*

7  *Stephen Snyder.* See **Exhibit E,** In Re Complex Asbestos Litigation, AO47921, First District, Div. Three,

8  July 19, 1991 (Snyder, while representing asbestos defendants, *disqualifying* asbestos Plaintiff lawyer for

9  hiring his former paralegal).

10     Fergus, Snyder and LaGrave all litigated <u>against</u> many of the exact same default and present

11  claimants of the Trust. Clearly, these former Brobeck lawyers cannot litigate against claimants and then

12  purport to "represent the interests" of these same claimants as Trustees, Attorneys for the Futures

13  Representative or Legal Consultants. <u>This is a conflict of interest which cannot be waived</u>. In fact, the

14  United States Department of Justice Chapter 11 Trustee Handbook specifically states that a Trustee must

15  be a "disinterested person."See **Exhibit F,** *Department of Justice Chapter 11 Trustee Handbook,*

16  published May 2004, pg. 8, Chapter 3.Disinterested person is defined at 11 U.S.C. §1104(d) and

17  specifically states that a Trustee must not be a person holding an interest materially adverse to the interest

18  of the estate by reason of a direct or indirect relationship to, connection with, or interest in the debtor.

19  *Ibid*. Snyder is clearly not "disinterested" and has clear conflicts of interest with the estate.

20     In addition, simultaneous with Snyder's service as Managing Trustee of the J.T. Thorpe, Inc.

21  Settlement Trust, Snyder <u>also served</u> as head of the Brobeck Liquidating Committee. See **Exhibit 5,**

22  attached to the *Declaration of Michael J. Mandelbrot*, attached as **Exhibit A.**

23     In these dual roles and clearly displaying a conflict of interest and lack of disinterestedness,

24  Snyder improperly misappropriated of $35,542,397to the Brobeck Liquidating committee and his other

25  former firm Morgan Lewis & Bockius. See **Exhibit C,** *Annual Reports of Western Asbestos (page 1), J.T.*

26  *Thorpe, Inc (page 2), and Thorpe Insulation (page 3) detailing the misappropriation of funds*.

27     Removal of Stephen Snyder as Managing Trustee due to fraud, misappropriation of funds and

28  conflicts of interest is necessary for the proper administration of the Trust. **Exhibit F,** *Department of*

1  *Justice Chapter 11 Trustee Handbook*, published May 2004, pg. 8, Chapter 3.In addition, pursuant to

2  § 1105 of the Bankruptcy Code, the court may terminate a Trustee's appointment and restore the debtor to

3  possession. See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*, published May 2004,

4  pg. 16.

5      The Beneficiaries and Mandelbrot request, as real parties in interest, that this Objection serve as

6  Notice that at the June 4, 2014 Annual Report meeting Mandelbrot will seek to terminate the appointment

7  of Stephen Snyder. Further, pursuant to § 105(a) of the Bankruptcy Code, the Beneficiaries and

8  Mandelbrot request this court raise, sua sponte, the issue of whether a trustee's appointment should be

9  terminated. See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*, published May 2004,

10  page 16.

11      **2.    OBJECTION TO NO. 3**: Appointment of Trust Advisory Committee –

12  **Objection: Fraud, Bad Faith, Conflicts of Interest.**

13      Alan Brayton, Chairman of the Trust Advisory Committee since the effective date of this Trust

14  filed the fraudulent Kananian claim referred to in Item No. 23(c) of the Western Asbestos Tenth Annual

15  Report and Accounting submitted April 30, 2014. The Trust first became aware of this fraudulent claim in

16  January 2007, when the Honorable Judge Harry Hanna issued a scathing published Order indicating that

17  Brayton had committed "institutional fraud" in the Kananian matter, including fraudulent bankruptcy

18  claims and claim forms, manipulation of evidence and had lied extensively to the Court about bankruptcy

19  claims. See **Exhibit 16**, *Hon. Judge Harry Hanna Order dated January 18, 2007, detailing Brayton*

20  *fraud*, attached to **Exhibit A**, *Declaration of Michael J. Mandelbrot dated March 12, 2014; see also,*

21  **Exhibit G**, *Various Articles Detailing Brayton fraud in Kananian.* (2007). Brayton was fraudulently paid

22  over $500,000 in the Kananian matter by the Western Asbestos Trust and his removal as Chairman of the

23  Trust Advisory Committee was required at that time. These fraudulently obtained monies by Chairman

24  Brayton have never been paid back to the Western Asbestos Trust. (See additional information in the

25  Objection below. The J.T. Thorpe, Inc. Trust Agreement permits removal of the Trust Advisory

26  Committee members due to "bad faith" and the "misappropriation of funds." Manager of the Trust

27  Advisory Committee Alan Brayton is guilty of both and his removal as the Manager of the Trust Advisory

28  Committee is mandated. Removal of Brayton as Chairman Trust Advisory Committee Member is also

1    required due to the conflicts of interest with Snyder, Fergus and McClain and the concealment of fraud.

2    Snyder, Brayton, McClain and Fergus were clearly not disinterested and operated with extensive conflicts

3    of interest. Brayton has also breached his fiduciary duty to claimants and beneficiaries and removal is

4    appropriate. See **Exhibit 18**, *Definition of Fiduciary,* attached to **Exhibit A**, *Declaration of Michael J.*

5    *Mandelbrot.*

6        **3.**    **OBJECTION TO NO.4**: **Appoint and Continuation of Futures Representative –**

7    **Objection: Fraud, Bad Faith, Conflicts of Interest.**

8        The Beneficiaries and Mandelbrot hereby incorporate all previously stated objections, as stated

9    herein. Since December 2, 2002 the Futures Representative has retained, used and utilized an attorney

10    with a conflict of interest, Gary Fergus. **Exhibit B**, *Declaration of Gary Fergus* dated March 20, 2014,

11    ¶¶ 2,4. As a former Judge, Charles B. Renfrew should never have offered employment to an individual

12    with a conflict of interest against beneficiaries (that cannot be waived). The hiring of a former asbestos

13    defense lawyer (who spent decades arguing victims of asbestos weren't sick, were liars and not exposed

14    to insulation) to represent future victims of asbestos disease is the representation of adverse interests and

15    clearly not in the best interest of future claimants. Any decisions involving Fergus should be considered

16    void and any and all monies paid to Fergus (clearly obtained through fraud) by the J.T. Thorpe, Inc. Trust

17    should be reimbursed to the Trust. The J.T. Thorpe, Inc. Settlement Trust, through these conflicts of

18    interest, has misappropriated to Fergus, a former defense attorney with a conflict of interest, millions of

19    dollars which should be reimbursed to the Trust. (***See, J.T. Thorpe, Inc. Annual Reports 2006-2013***

20    ***relating to "Significant Vendors."***)In bad faith, Fergus also assisted in the misappropriation of

21    $35,542,397 to his former friends and co-workers at the Brobeck firm. See **Exhibit B**, *Declaration of*

22    *Gary Fergus* dated March 20, 2014, ¶¶ 2, 4.

23        Fergus is clearly not "disinterested" and has interests adverse to the future and present claimants

24    of the J.T. Thorpe, Inc. Trust. Moreover, the Futures Representative Charles B. Renfrew, a man of

25    advanced age and limited faculties, should be removed for the bad faith hiring of Mr. Fergus and the

26    misappropriation of funds to Fergus and others.

27        **4.**    **OBJECTION TO NO. 16**: **J.T. Thorpe Settlement Trust, Thorpe Insulation Settlement**

28    **Trust, Plant Insulation Company Asbestos Settlement Trust Administration – Objection: Fraud,**

1   Bad Faith, Conflicts of Interest.

2       California Courts have determined that multiple representations in related estates create a

3   rebuttable presumption that the representation is per se improper. See, e.g., **In re Lee, 94 B.R. 172, 180**

4   **(Bankr. C.D. Cal 1988).** See, **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*, published

5   May 2004, page 16.

6       The sharing of J.T. Thorpe, Inc. and Western Trust Trustees, fiduciaries, employees and staff as

7   multiple representatives in related estates is per se improper. This creates a conflict of interest as Trustees,

8   fiduciaries and trust employees have access to confidential documents submitted for the purposes of

9   individual claims. In addition, numerous Trust employees, including former Brobeck attorney (who

10  oversees claim processing) Chuck LaGrave, have a conflict of interest and interests adverse to the estate.

11  Extensive conflicts exist against many Claimants' attorneys and claimants, and these conflicts are

12  applicable to the entire staff. In addition, the use and utilization of Trust funds specifically for

13  beneficiaries of the J.T. Thorpe, Inc. Trust is an improper use of Trust funds. The Trust clearly fails to

14  mention this sharing agreement includes the Thorpe Insulation Trust.

15      **5.**   **OBJECTION TO NO.19:**Indemnity Fund (Self Insured Retention) – Objection:

16  **Misappropriation of Trust Funds, Bad Faith, Fraud, Conflicts of Interest**

17      This is a misappropriation of $5,000,000 of the Trust beneficiaries' assets. Clearly, this

18  misappropriation is due to the prior misappropriation of over $40,000,000 by the Managing Trustee

19  Stephen Snyder and Trust Advisory Committee Members Alan Brayton and David McClain as described

20  above. As described in the 2004 Western Asbestos Trust's Annual Reports, the Trust was unable to secure

21  indemnity insurance.See*2004 Western Asbestos Settlement Trust Annual Report and Accounting,* pg. 7,

22  No. 16 (Self Insured Retention).

23      The Trustees committed bankruptcy fraud in 2004 by indicating that insurance is "cost

24  prohibitive." This was a lie and bankruptcy fraud. The reason for the Western Trust's inability to secure

25  indemnity insurance in 2004 was clearly due to the misappropriation of Trust Funds (a.k.a. "Special

26  Bonuses") previously paid to Trust Advisory Committee Members and Brobeck which were wholly

27  improper. See*2004 Western Asbestos Settlement Trust Annual Report and Accounting,* pg.11, No. 22, 23.

28

1    Clearly, the premiums for indemnity insurance for Trustees, the Trust's officers and employees,

2    the Futures Representative, the TAC and each of their respective agents would be far less than

3    $40,000,000. The misappropriation of $5,000,000 by a self-insured retention fund is bad faith, fraud, a

4    misappropriation of Trust funds and is driven by a conflict of interest and a desire to conceal fraud. A

5    review of the 2004 Western. Asbestos Settlement Trust Annual Report reveals that this $40,000,000 fund

6    was created in 2004 and indicates that the monies would be returned to the Trust "after 3 years" (not

7    coincidentally, the same as the Statute of Limitations for Fraud).See _2004 Western Asbestos Settlement_

8    _Trust Annual Report and Accounting,_ pg.7, No. 16 (Self Insured Retention).

9        The $40,000,000 was never returned to the Western Trust after 3 years and clearly remains in

10    place due to the bad faith, fraud and misappropriation of funds by Trustees, Futures Representative, Trust

11    Advisory Committee Members and their respective Agents and Professionals. In J.T. Thorpe, Inc., this

12    $5,000,000 should be returned to the beneficiaries.

13        6.   **OBJECTION TO NO. 20**: Legal Disputes – Objection: Fraud, Bad Faith, Conflicts of

14    **Interests, Misrepresentation of Material Facts**

15        Morgan, Lewis & Bockius, (hereinafter "Morgan") counsel to the Trust, is a "Professional" whose

16    employment must be approved by the Court and must be disinterested. Professionals are required to be

17    "disinterested and hold no interest adverse to the estate."See **Exhibit F**, _Department of Justice Chapter 11_

18    _Trustee Handbook_, published May 2004, pg. 64, Chapter 10 – Employment and Supervision of

19    Professionals. Morgan is also Managing Trustee Stephen Snyder's former employer. Morgan is also a

20    firm that represents asbestos defendants against the interest of beneficiaries. Morgan is also a firm that

21    improperly diverted millions of dollars of J.T. Thorpe, Inc. Trust assets. (_See2004 Western Asbestos_

22    _Settlement Trust Annual Report and Accounting,_ pg. 11, No. 23.)Morgan Lewis employs many former

23    Brobeck lawyers.

24        Morgan clearly has a known conflict of interest and is not a disinterested party. As a result of this

25    conflict, Morgan was put on a multi-million dollar retainer agreement by the Western Trust and given a

26    fee contract with an improper and unethical "success fee."A "success fee" is not in the best interest of

27    beneficiaries and allows for those with adverse interests (i.e., Snyder, Fergus) to award improper fees to

28    their former co-workers at Morgan. The "success fee" is unauthorized and a fraud on the beneficiaries and

1  must be stricken. The Department of Justice Trustee Handbook clearly does not authorize the hiring of a

2  Professional with a clear conflict of interest (and especially no "success fee") and clearly this hiring of

3  Morgan by the Trust amounts to fraud.

4        The employment of a professional with a conflict of interest can result in the denial of

5  compensation to the professional under 11 U.S.C. § 328(c) and to the Trustee under § 326(d). See **Exhibit**

6  **F**, *Department of Justice Chapter 11 Trustee Handbook*, published May 2004, pg. 64, Chapter 10 –

7  Employment and Supervision of Professionals. Any compensation to Morgan should be denied.

8        **7.    ADDITIONAL OBJECTION TO NO. 23(b) AND EXHIBIT "C":***J.T. Thorpe, Inc.*

9  *Asbestos Settlement Trust v. Michael J. Mandelbrot and Mandelbrot Law Firm,* **Adversary Proceeding**

10 **United States Bankruptcy Court for the Central District, Adversary Case No. 2:12-ap-02182-BB -**

11 **Objection: Fraud, Perjury, Bad Faith, Conflicts of Interest, Misrepresentation of Material Facts**

12       On October 29, 2013, the Honorable Thomas Carlson dismissed the identical Western Asbestos

13 Trust case against Mandelbrot without prejudice due to the case having no merit. See **Exhibit 11**,

14 *Dismissal by the Honorable Thomas Carlson,* attached to **Exhibit A**, *Declaration of Michael J.*

15 *Mandelbrot.*

16       However, identical cases with nearly identical facts existed in the J.T. Thorpe Settlement Trust

17 and the Thorpe Insulation Company Asbestos Trust v. Mandelbrot in the U.S. Bankruptcy Court for the

18 Central District of California, Case No. 2:12-ap-02182BB. The Honorable Sheri Bluebond presided over

19 that case. The Thorpe case against Mandelbrot was initiated after Mandelbrot accused the Trusts of bad

20 faith, corruption and misappropriation of funds throughout 2010-2011, after Mandelbrot discovered fraud

21 and corruption at the Trusts. See **Exhibit 4**, *E-mails and letters (2010-2011) from Mandelbrot to Trust and*

22 *Fiduciaries re: Bad faith and misappropriation of fund,* attached to **Exhibit A**, *Declaration of Michael J.*

23 *Mandelbrot.*

24       The Thorpe Trusts had <u>never</u> previously accused Mandelbrot of wrongdoing and never questioned

25 the authenticity and veracity of claims filed by Mandelbrot. To support the case against Mandelbrot, the

26 Trusts relied on the testimony of their former employee John Lynch, someone known to the J.T. Thorpe,

27 Inc. Trust (but unknown to Mandelbrot) as a "pathological liar" and felon, who had also stolen over

28 $20,000 from J.T. Thorpe, Inc. Trust processor Whitney Lauren. See **Exhibit 7**, *Lynch Fraud Documents,*

1   attached to **Exhibit A**, Declaration of Michael J. Mandelbrot dated March 12, 2014. Lynch also had just

2   burglarized Mandelbrot's office and stolen and forged checks. This was the Trust's "star" witness against

3   Mandelbrot.

4       Once the bad faith cases against Mandelbrot were filed by the J.T. Thorpe, Inc. and Thorpe Trusts,

5   the Trust sent a letter dated May 24, 2013, with a 'finding' that Mandelbrot was unreliable. See

6   **Exhibit H**, Fraudulent *"May letter"* sent by Trust to Mandelbrot and signed by Snyder, dated May 24,

7   2013.The May 24, 2013 letter was supported by a "study" of Mandelbrot claims which was a complete

8   fraud with a false study of Mandelbrot claims done to achieve the results the Trust desired. The control

9   groups used for the 'study' of Mandelbrot claims (deficient claims of Mandelbrot v. deficient claims of

10  other firms) were not randomly selected and as many "hold or deferred" claims of other firms are deemed

11  "deficient claims," the study was a fraud. The study to support the May 24, 2013 letter against

12  Mandelbrot and the entire Thorpe case against Mandelbrot was a complete fraud and defamation and

13  clearly designed to harm beneficiaries and to continue to concealment and cover up of fraud by the Trust

14  and its fiduciaries.

15      The case proceeded to trial before the Honorable Sheri Bluebond on January 21, 2014. Lawyers

16  for the Thorpe Trusts were Stutman, Treister and Glatt (along with Morgan). Prior to trial, neither

17  Bluebond nor Stutman revealed a "close and intimate connection" between themselves. Bluebond and

18  Stutman simultaneously served on the Board of Directors of five different organizations, Stutman was

19  campaigning for Bluebond's reappointment in 2015, and Bluebond was serving as a public speaker at

20  Stutman-sponsored events during the litigation. Recusal was appropriate due to the Honorable Bluebond's

21  bias, prejudice, and close and intimate connection with the Stutman firm. See **Exhibit I**, *E-mail from*

22  *Mandelbrot to Trust Counsel re: Stutman/Bluebond close and personal connection* dated April 4,

23  2014,with Exhibits.

24      During the trial Judge Bluebond exhibited Judicial Misconduct by making every ruling for her

25  friends (Stutman), being rude to litigants (Mandelbrot) and literally "inventing" facts in an effort to make

26  Mandelbrot look unreliable. See **Exhibit J**, *Tentative Ruling from Judge Sheri Bluebond dated March 23,*

27  *2014containing perjury and displaying close relationship to Trust lawyers (Stutman).*

28      In this tentative ruling, Bluebond states (also read into the Record) that "Mandelbrot had a practice

1  of submitting claims for as large as possible ... .". *Id*. This was judicial perjury. The practice of

2  submitting a claim for as large as possible was never an allegation against Mandelbrot and/or the

3  Mandelbrot office, was never presented in evidence by the trusts, was materially false and clearly showed

4  a judicial bias in favor of Stutman and the Trusts and prejudice against Mandelbrot. The critical claims at

5  issue were all LOW value claims.

6         Additional evidence at trial showed there were never irregularities in Mandelbrot's submissions,

7  but instead that the Trusts used a Trust Processor with clear adverse interests to 'create' deficiencies on

8  Mandelbrot claims. In addition, the Trust never followed the FIFO queue, failed to treat Mandelbrot

9  claims similar to those of Trust Advisory Committee members and consistently made "retroactive"

10  changes to the Trust (amendments) and Mandelbrot's claim filing practices were extremely thorough. See

11  **Exhibit A**, *Declaration of Michael J. Mandelbrot*, dated March 12, 2014, ¶¶ 1-30.

12         Prior to December 2011, Mandelbrot filed approximately 20 deficient claims with the J.T. Thorpe,

13  Inc. The Trust indicating that Navy sailors who leave their ships during ship overhauls would "chip

14  refractory" in the shipyard. After both consulting with the Trust Executive Director and Trust staff and

15  realizing that the claims were deficient, Mandelbrot withdrew each of these claims prior to December 20,

16  2011. Despite Mandelbrot's good faith in withdrawing each of the claims (long prior to the lawsuit), the

17  Trust's lawsuit began focusing on alleging these claims were fraud (the so called "disembarkment

18  claims"). The clear issue at trial became "whether or not Navy sailors are exposed in Navy Shipyards

19  during overhauls." The clear answer was, "Yes." Mandelbrot submitted Declarations and testimony from

20  Captain F.J. Burger, USN, (Ret.), and Navy sailor Paul Genthner supporting the same. See **Exhibit K**,

21  *Declaration of Captain Frank J. Burger, USN (Ret.)* dated October 15, 2013. See **Exhibit L**, *Declaration*

22  *of Paul Genthner, Long Beach Navy Shipyard* employee dated October 1, 2013.

23         On January 23, 2014, Mandelbrot's former counsel negotiated a void, wholly unethical,

24  unconscionable and unenforceable settlement agreement involving not only the Thorpe Trusts, but also

25  the Western. Asbestos Company Settlement Trust and the Plant Insulation Settlement Trust. Mandelbrot

26  "reluctantly" agreed on the record despite never having seen the agreement or fully understanding the

27  terms of the agreement. See **Exhibit A**, *Declaration of Michael J. Mandelbrot*, dated March 12, 2014,

28

1    ¶¶ 1-30.The void, unethical and unconscionable settlement agreement was clearly negotiated through

2    fraud and duress. *Id.*

3            The settlement involved not just the Thorpe Trusts, but also the Western Asbestos Company

4    Settlement Trust and the Plant Insulation Trust. On January 27, 2014, Mandelbrot terminated his

5    relationship with his counsel and notified the Thorpe Trusts that the settlement agreement was rescinded,

6    unethical, void and unenforceable. The settlement agreement far exceeded the damages prayed for in the

7    Complaint. In addition, Bankruptcy Rule 9019 requires Chapter 11 Trustees to obtain Court approval for

8    such compromises and settlements. See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*,

9    published May 2004, pg. 47, Chapter 8 (Compromises and Settlements). The Trustee must show that the

10   settlement is in the best interest of the estate and that the compromise and settlement has been properly

11   served upon creditors so they have an opportunity to review the proposed settlement and object. *Ibid.* The

12   Honorable Thomas Carlson has never approved the settlement involving the Western Asbestos Settlement

13   Trust and Plant Insulation Trust despite having exclusive jurisdiction over the Trusts and settlement is

14   clearly not in the best interest of those Trusts. However, utilizing the close and personal relationship with

15   the Honorable Sheri Bluebond, the Trust sought enforcement of the invalid January 23, 2014 settlement

16   agreement involving all four Trusts.

17           Despite a vociferous verbal and lengthy written objection by Mandelbrot and a substantial

18   showing of Trust fraud and perjury by the J.T. Thorpe, Inc. Settlement Trust and its lawyers, the

19   Honorable Sheri Bluebond ordered enforcement of the January 23, 2014 "agreement." See **Exhibit M**,

20   *Opposition to Motion to Enforce Settlement Agreement dated March 12, 2014.*Bluebond's Order

21   effectively terminated Mandelbrot's claim filing privileges with the Western Asbestos, Thorpe Insulation,

22   Plant Insulation, and J.T. Thorpe, Inc. Settlement Trusts.

23           The Honorable Thomas Carlson has never approved the settlement as required by Bankruptcy

24   Rule 9019. Mandelbrot has filed a timely Appeal to Judge Sheri Bluebond's Order and "Judgment" citing

25   fraud, lack of jurisdiction, and that the settlement is void and unethical under California law and the

26   Business and Professions Code and due to fraud. See **Exhibit N**, *Appeal filed by Mandelbrot.*

27           **ADDITIONAL OBJECTION TO NO. 20:Resolution Regarding Default Judgments (See**

28   **Western Asbestos Tenth Annual Report and Accounting)– Objections: Criminal Bankruptcy Fraud**

1   (18 U.S.C. §§ 152-156), Bad Faith, Perjury, Misrepresentations of Material Facts, Conflicts of

2   Interest, Failure to Notify the United States Trustee of Fraud

3        The J.T. Thorpe, Inc. Trustees (and especially Stephen Snyder) first became aware of Managing

4   Trustee Alan Brayton's extensive bankruptcy fraud on January 18, 2007, when the Honorable Judge

5   Harry Hannah issued a scathing Order and Opinion in *Kananian v. Lorillard Tobacco*, CV442750,

6   Cuyahoga, County, OH indicating Alan Brayton committed institutional fraud, bankruptcy fraud,

7   concealed evidence and disqualified him from ever practicing in Ohio. See **Exhibit 16**, *Hon. Judge Harry*

8   *Hanna Order dated January 18, 2007*, attached to **Exhibit A**, *Declaration of Michael J. Mandelbrot*.

9   Dozens of newspapers also published stories indicating Alan Brayton had committed fraud and

10  bankruptcy fraud with headlines reading, "Ohio Judge Slaps Down Novato's Brayton Pucell" and "Major

11  Asbestos Law Firm Barred from Court over "Double Dipping" and "Ohio Court Disqualifies Plaintiff

12  Counsel for Misconduct." See **Exhibit G**, *Various Newspapers Articles Detailing Brayton fraud in*

13  *Kananian,* 2007.

14       Alan Brayton was the attorney for the Kananian family simultaneous with his service as the

15  Chairman of the Trust Advisory Committee of the J.T. Thorpe, Inc. Trust. Western Asbestos Trust

16  fraudulently paid Managing Trustee Alan Brayton over $500,000 on a fraudulent default for

17  Mr. Kananian. **Any and all evidence indicates the Kananian default judgment filed and proved up by**

18  **Trust Fiduciary Alan Brayton was complete fraud.** See **Exhibit 20**, *Brayton internal e-mail dated*

19  *April 5, 2005, indicating Kananian had no exposure to Western Asbestos,* attached to **Exhibit A**,

20  Declaration of Michael J. Mandelbrot; See **Exhibit 22**, *Brayton internal e-mails regarding "making up*

21  *information" and "boilerplates,"* attached to **Exhibit A**, Declaration of Michael J. Mandelbrot. See

22  **Exhibit 23**, *Andreas v. Brayton Purcell Complaint detailing fraud by Brayton*, attached to **Exhibit A**,

23  Declaration of Michael J. Mandelbrot dated March 12, 2014. Without question, all documents and

24  evidence clearly reveal the J.T. Thorpe, Inc. Default Judgment was a fraud proved up by Alan Brayton.

25  Mr. Kananian was never exposed at Hunters Point Naval Shipyard as claimed. Boilerplate affidavits

26  wholly unacceptable to the Trust were used to 'create' exposure and inflate damages. Unquestionably, a

27  fraud was committed and extensive funds were misappropriated to a Trust fiduciary.

28

1    To the extent that the Trustee either discovers or verifies the existence of fraudulent activity, the

2  trustee should notify the United States Trustee immediately. See **Exhibit F**, *Department of Justice*

3  *Chapter 11 Trustee Handbook*, published May 2004, pgs. 21-22, Chapter 3, (Bankruptcy Crimes). The

4  United States Trustee was never notified of the Kananian fraudulent default taken by Chairman Brayton.

5  Managing Trustee Stephen Snyder clearly had reasonable grounds to believe in 2007 that Alan Brayton

6  committed a crime (18 U.S.C. §152) and a criminal referral was required. *Id.*at pg. 22. Specific criminal

7  violations by the J.T. Thorpe, Inc. Trust Advisory Committee Chairman Alan Brayton and Managing

8  Trustee Stephen Snyder relating to the Kananian matter included, but was not limited to, knowingly and

9  fraudulently: 1) Concealing property of the estate; 2) Making a false oath or account in relation to a

10 bankruptcy case; 3) Making a false declaration and verification in relation to a bankruptcy case;

11 4) Making a false proof of claim; 5) Receiving a material amount of property from the debtor with intent

12 to defeat the Bankruptcy Code; 6) Transferring or concealing property with the intent to defeat the

13 Bankruptcy Code; 7) Withholding documents relating to the debtor's property and financial affairs from a

14 Trustee or officer of the Court. *18 U.S.C. §§ 152, 157*. See also **Exhibit F**, *Department of Justice Chapter*

15 *11 Trustee Handbook*, published May 2004, pgs. 21-22, Chapter 3- (Bankruptcy Crimes).Clearly, Alan

16 Brayton, as Chairman of the J.T. Thorpe, Inc. Trust Advisory Committee, having committed bankruptcy

17 fraud on the J.T. Thorpe, Inc. Trust should have been removed in 2007.

18    However, the J.T. Thorpe, Inc. Trust and staff continued to cover up and conceal the Kananian

19 fraud. Next, on March 22, 2010, the J.T. Thorpe, Inc. Trustees had clear evidence that Chairman Brayton

20 committed fraud in the Kananian claim when the J.T. Thorpe, Inc. Trust Executive Director Sara Beth

21 Brown (also a licensed California attorney) received a subpoena and was deposed in Kananian v. Brayton

22 Purcell after Alan Brayton was sued for malpractice.

23    Brown specifically testified and produced documents on March 22, 2010,clearly showing the

24 Kananian default was fraud and paid to Alan Brayton. See **Exhibit 20**, *Brayton internal e-mail dated*

25 *April 5, 2005 indicating Kananian no exposure to Western Asbestos*, attached to **Exhibit A**, Declaration

26 of Michael J. Mandelbrot. See **Exhibit 21**, *Fraudulent and Boilerplate Documents filed with the*

27 *Kananian default*, attached to **Exhibit A**, Declaration of Michael J. Mandelbrot. See **Exhibit 22**, *Brayton*

28 *internal e-mails regarding "making up information" and "boilerplates,"* attached to **Exhibit A**,

1    Declaration of Michael J. Mandelbrot dated March 12, 2014.See **Exhibit 23**, *Andreas v. Brayton Purcell*

2    *Complaint detailing fraud by Brayton*, attached to **Exhibit A**, Declaration of Michael J. Mandelbrot dated

3    March 12, 2014.

4          In the Executive Director Brown deposition, it was clear that substantial bankruptcy fraud was

5    committed in that Brayton proved an entirely <u>false default,</u> including but not limited to: 1) Brayton

6    claiming Kananian was exposed to asbestos from J.T. Thorpe, Inc. while at Hunters Point Naval Shipyard

7    although Kananian was <u>never</u> at Hunters Point Naval Shipyard; 2) The utilization of fraudulent boilerplate

8    exposure affidavits not acceptable to the Trust; 3) The utilization of boilerplate damages affidavits

9    designed to increase the default award; 4) Accepting thousands of dollars of additional fraudulently

10   obtained monies on the Kananian claim in 2006, 2007 and 2010, after it was clearly proven the default

11   judgment (claim) was a fraud. *Ibid.* See also 2013 Western Annual Report ¶ 13 regarding increases in

12   payment percentages.

13         In furtherance of this criminal bankruptcy fraud and in an attempt to continue to <u>criminally</u>

14   <u>conceal</u> the Brayton fraud, Sara Beth Brown, Trustees and Trust Advisory Committee Members <u>never</u>

15   <u>reported her subpoena, the deposition of March 22, 2010, or the Kananian fraudulent judgment in any</u>

16   <u>Annual Reports from 2010 through 2013</u>. Each Annual Report filed by the J.T. Thorpe, Inc. Trust from

17   2007-2013 indicated "the factual statements in this Annual report are supported by the Declaration of Sara

18   Beth Brown, executive Director, in Support of Motion to Approve the Annual Reports (See 2013 Tenth

19   Annual J.T. Thorpe, Inc. Report, pg. 2, line. 16-17). In every J.T. Thorpe, Inc. Annual Report from 2010-

20   2013, Brown listed "legal matters," "depositions" and "subpoenas received." But not here. Brown

21   criminally concealed the fraudulent Brayton default, the fraudulent documents associated with the default,

22   and failed to report the same in every Annual Report. Every Declaration Sara Beth Brown signed to

23   support the Annual Reports from at least 2010 through 2013 is clearly perjury and criminal bankruptcy

24   fraud. 18 U.S.C.§§152, 157. Brown's immediate removal as Executive Director is clearly necessary due

25   to criminal bankruptcy fraud, concealing bankruptcy fraud and filing false Bankruptcy reports with the

26   United States Trustee. See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*, published

27   May 2004, pgs. 21-22, Chapter 3, (Bankruptcy Crimes).

28         Additional and extensive information is in the possession of the J.T. Thorpe, Inc. Company Trust

that confirms the Kananian default (and others), taken by Alan Brayton, was a fraud, including but not limited to the following:

1) Alan Brayton's own internal firm e-mails which clearly indicate there is "not enough exposure" to qualify for the Western Trust. See **Exhibit 20**, *Brayton internal e-mail dated April 5, 2005 indicating Kananian no exposure to Western Asbestos*, attached to **Exhibit A**;

2) Alan Brayton's own internal firm e-mails wherein Brayton tells his firm (only after being caught in the Kananian fraud) to stop "making up" information on bankruptcy claims to stop using 'boilerplate documents "See **Exhibit 22**, *Brayton internal e-mails regarding "making up information" and "boilerplates,"* attached to **Exhibit A**; The boilerplates referenced are **exactly** the boilerplates Mandelbrot recalls from his employ at Brayton Purcell.

3) Additional lawsuits against Brayton which detail the fraudulent Kananian claim. See **Exhibit 23**, *Andreas v. Brayton Purcell Complaint detailing fraud by Brayton*, attached to **Exhibit A**;

4) Brayton's own former employees (including Mandelbrot) who will testify the exact boilerplate documents and exposure fraud committed in Kananian were utilized in hundreds of other defaults taken by Brayton. See **Exhibit A**, *Declaration of Michael J. Mandelbrot*, dated March 12, 2014, ¶¶ 3-5, inclusive;

5) Stephen Snyder's Testimony dated August 30, 2013in *Thorpe v. Mandelbrot* wherein he commits perjury in discussing the Kananian claim and the discoveries of the Trust. See **Exhibit O**, *Deposition of Stephen Snyder dated August 30, 2013, pages 21-35*, inclusive. Snyder and the Trust clearly also made sure the name "Kananian" was misspelled "Canadian" in the transcript to ensure no further discoveries of the fraud.

The Annual Report conclusion by the Trustees "that incurring the expense of pursuing this matter further – or investigating other default judgments – would not benefit the Trust's beneficiaries" is criminal fraud, bad faith, misrepresentation of material facts and wholly untrue (see 2013 Tenth Western Annual Report, pg. 15, line. 13, 14). The Kananian claim alone is $500,000 which should be repaid to the J.T. Thorpe, Inc. Trust for the benefit of beneficiaries. This $500,000 can easily fund an investigation of and review of other fraudulent Brayton default judgments. Only a small portion of the 1900 default

1    judgments referenced by the Trust in the Annual Report were filed by Brayton. The potential recovery for

2    the beneficiaries is well over $50,000,000. The expense of the investigation is clearly justified.

3    Mandelbrot would review every Brayton default for <u>free</u> for the benefit of the beneficiaries.

4          The investigation of ALL default judgments taken by Brayton should have been done in 2007 for

5    the benefit of beneficiaries and needs to be done now. Especially given that Brayton was paid over

6    $100,000,000 in defaults judgments (including Kananian), the possible recovery to the Trust is extensive.

7    Unfortunately, due to unethical conflicts of interest and adverse interests, the Trustees (specifically

8    Stephen Snyder), Trust Advisory Committee (David McClain and attorney Steven Sacks), the Futures

9    Representative (including Gary Fergus) and Trust Fiduciaries (Executive Director Sara Beth Brown)

10   chose to <u>conceal</u> the fraud in 2007 despite the legal duty to report the fraud. ***Ibid***. The J.T. Thorpe, Inc.

11   Company Trust Annual Reports from 2007-2014 are clearly bankruptcy fraud for concealing these facts.

12   ***Ibid***. Importantly, even after the J.T. Thorpe, Inc. Trustees learned of this fraud in 2006, additional crimes

13   were committed by paying (fraudulently) additional monies to Brayton in Kananian in 2006, 2007, and

14   2010. Alan Brayton, head Trust Advisory Committee Member of the J.T. Thorpe, Inc. Company Trust has

15   <u>never</u> repaid these criminally obtained monies to the Trust for the beneficiaries. See **Exhibit 23, ¶¶ 52-**

16   **100, inclusive,** *Andreas v. Brayton Purcell Complaint detailing fraudulent defaults by Fiduciary Brayton*,

17   attached to **Exhibit A**, Declaration of Michael J. Mandelbrot.

18         Clearly, the conclusion by the Trust not to require disgorgement from Brayton of wrongfully

19   received monies, not to investigate all of Brayton's default judgments (possibly over $200,000,000

20   fraudulently obtained) and to permanently remove Alan Brayton as a Chairman of the Trust Advisory

21   Committee harms beneficiaries and is due to conflicts of interest, adverse interests and the attempts to

22   conceal criminal fraud by the Trust, its attorney and agents. Nothing prohibits the review of fraudulent

23   default judgments and the Court's Order expressly does not prohibit the same. The Trusts indicating that

24   the "confirmation hearing expressly eliminated the possibility of such an enterprise" is clearly perjury and

25   fraud designed to harm the beneficiaries. Every Brayton default judgment needs to be reviewed for the

26   benefit of the beneficiaries to return fraudulently obtained monies by Brayton to the Western Asbestos

27   Company Trust.

28         As additional evidence of the Brayton fraud requiring removal, it should be clearly noted that at

1   the same time Brayton proved up the fraudulent Kananian Default (2002), Brayton also committed tax

2   fraud on the Government and underreported his taxable income by well over $12,000,000. Over 10 years

3   later, Brayton *finally* admitted this fraud and paid $3,580,346 in additional tax liability for 2002, plus a

4   penalty of $537,051. See **Exhibit P** – Brayton Tax Deficiency 2002, dated January 24, 2013. Brayton was

5   clearly attempting to conceal his fraud from the government as well.

6          It should also be clearly noted that the Trust's investigation of the fraudulent Kananian default

7   proven and paid to Chairman Alan Brayton was a complete sham. The Trust hired Keker & Van Nest LLP

8   to investigate the Brayton fraud and paid them well over $100,000. Keker & Van Nest was wholly

9   unqualified to investigate this claim and had a clear conflict of interest. Keker & Van Nest has no

10  experience in asbestos litigation, never filed an asbestos trust claim (except possibly the false claim

11  identified in the Tenth Western Asbestos Annual Report, Item No. 23), never represented a victim of

12  asbestos disease and is only noted as a "White Collar Criminal Defense" firm (something the Trustees and

13  TAC members clearly need). In addition, Keker & Van Nest shares office space with the Futures

14  Representative of the Trust creating a conflict and lack of "disinterest." Clearly, the investigation by

15  Keker & Van Nest of the Brayton fraud was influenced by the Futures Representative (and its attorney

16  Gary Fergus) to achieve a result justifying the Trustee's (corrupt and criminal) actions. Any monies paid

17  to Keker & Van Nest should be returned to the Trust for the benefit of beneficiaries due to

18  misappropriation.

19          **8.    OBJECTION TO NO.21: Amendments to Trust Documents – Objection, Conflicts of**

20  **Interest, Fraud, Bad Faith**

21          The Beneficiaries and Mandelbrot hereby incorporate by reference the "General Objections"

22  stated above and Specific Objections to Item Nos. 3-5 above, as stated herein. These amendments, as well

23  as all prior amendments voted by Trustees, Futures Representatives and Trust Advisory Committee

24  members are void due to conflicts of interest and fraud. In addition, the J.T. Thorpe, Inc. Asbestos

25  Company Trust has always retroactively applied changes in bad faith. See **Exhibit 4**.*Letters and E-mails*

26  *by Mandelbrot to Trust detailing retroactive Trust changes and Trust Bad Faith*, attached to **Exhibit A**,

27  Declaration of Michael J. Mandelbrot. The vague amendments by the J.T. Thorpe, Inc. Trust should be

28  considered void.

9. **OBJECTION TO NO. 22(e):** **Notification to Beneficiaries – Notice of Settlement of Mandelbrot adversary proceeding (posted January 31, 2014). – Objection, Conflicts of Interest, Fraud, Bad Faith, Defamation**

No settlement between Mandelbrot and the Western Asbestos Company Trust has ever been approved by the Honorable Thomas Carlson. In fact, Judge Carlson dismissed the Western Asbestos Company Trust case against Mandelbrot. See **Exhibit 11**, *Dismissal by the Honorable Thomas Carlson,* attached **to Exhibit A**, *Declaration of Michael J. Mandelbrot dated March 12, 2014.* The substance of the Notice and facts therein, amount to defamation of Mandelbrot and constitute retaliation resulting from Mandelbrot's notifications to Trusts of Trustees, Trust Advisory Committee Members and their Agents' fraud and misappropriation of funds. Any such Notice should be removed and corrective action taken.

10. **OBJECTION TO NO. 23:** **Attempt to Place False Claim in Database – Objection: Fraud, Bad Faith, Perjury, and Misrepresentation of Material Facts**

Since early February, the Trust FTP sites have "closed" with very little information given to beneficiaries. This has been incredibly burdensome on Beneficiaries and counsel and has caused considerable delays in reviews of claims. The Annual Report is the first time the Trusts have reported that ONE false claim was filed. There has never been a Notice to Beneficiaries that a false claim was placed in the database. Unquestionably, the notice of "one false claim" is a fraud. The Trust website/system was taken offline as an effort to continue to perpetrate fraud (detailed above), conceal evidence (of Trust fraud) and to impair Mandelbrot's ability to transfer claims. In addition, evidence exists that a criminal investigation of the Trusts is already taking place. The Beneficiaries request complete information about the "false claim" (who made it, when, and all circumstances surrounding the same). Moreover, the potential placement of one false claim does not require the cost and expense of an entirely new system and impairing hundreds of pending and future beneficiaries' ability to file claims. This is criminal fraud, a sham and creates irreparable harm to Beneficiaries. Claims are delayed and have to be re-filed and a review of prior claim filings is not possible. This removal of the FTP claim filing site is clearly a sham by the Trust, Trustees, Fiduciaries and Professionals to hide and conceal criminal fraud. Clearly, it is suspected that Keker & Van Nest "guided" the Trusts as to the best method to conceal information of the FTP site as an effort to continue to perpetrate criminal fraud.

11. **OBJECTION TO NO. 26:** **Trustee Compensation – Objection, Conflicts of Interest,**
**Fraud, Bad Faith**

The Beneficiaries and Mandelbrot incorporate by reference herein Objections to Item Nos. 3-5
above, as stated herein. Each Trustee is not a "disinterested party" and any compensation to the same is
void and should be recouped to the Trust for the benefit of the Beneficiaries. As stated above, Trustee
Stephen Snyder has committed multiple and extensive bankruptcy crimes (18 U.S.C. §§ 152-157). Futures
Representative Charles Renfrew's compensation should also be considered void for his employment of an
attorney with a conflict of interest.

12. **OBJECTION TO NO. 30:** **Significant Vendors – Objection: Conflicts of Interest, Fraud,**
**Bad Faith, and Misappropriation of Trust Funds**

The Beneficiaries and Mandelbrot incorporate by reference herein Objections to Item Nos. 2-4 and
No. 23(c) above, as stated herein. The following "Significant Vendors" are not "disinterested parties" and
have interests adverse to Beneficiaries and all Beneficiaries' Counsel: Fergus, a Law Office, Counsel to
the Honorable Charles Renfrew; Futures Representative, Keker & Van Nest LLP, law firm hired to
investigate the matter described in ¶ 23(c); Charles W. LaGrave, Claims and legal consultant to the Trust;
Molland Law; Morgan Lewis & Bockius; Shephard Mullin Richter & Hampton LLP; and Stutman,
Treister & Glatt P.C.  Each of the above has a conflict of interest pursuant to the California Rules of
Professional Conduct and is not a disinterested party as having interests adverse to the Estate. Each has
also assisted in the concealment and cover-up of Brayton fraud in the <u>Kananian</u> claim. In addition,
payments to each of the above were procured through bad faith and/or fraud. Any and all payments to the
above should be considered null and void and returned to the Beneficiaries and their permanent removal
as significant vendors is mandatory due to fraud. Gary Fergus, counsel for the Futures Representative,
specifically has committed multiple acts of criminal and unethical conduct and conspired to
misappropriate and has misappropriated millions of dollars from beneficiaries. Every dollar billed to the
Trust by Gary Fergus (Fergus, a Law Office) from 2004-2014 should be returned to the Trust due to
fraud, bad faith, unethical conduct and conflicts of interests. Fergus was also a significant factor in
misappropriating Trust funds of $35,542,397 to his former firm (Brobeck) and has committed extensive
fraud and unethical misconduct. **Exhibit B**, _Declaration of Gary Fergus_ dated March 20, 2014, ¶¶ 2,4. A

1  referral to the United States Attorney is clearly warranted. Fergus, LaGrave, Molland and Benjamin Smith

2  (Morgan) are all former asbestos defense attorneys with Snyder at Brobeck and have significant interests

3  adverse to the estate. Steve Sacks (Shephard Mullin) also has extensive conflicts of interest and has

4  committed perjury in order to criminally conceal the fraud detailed in Objection to No. 23(c), above.

5  Sacks committed perjury to defend Alan Brayton and has failed in his duties to the Trust. See **Exhibit A**,

6  *Declaration of Michael J. Mandelbrot*, dated March 12, 2014, ¶ 14(c). See **Exhibits 16 and 16(a)**, *Hon.*

7  *Judge Harry Hanna Order dated January 18, 2007, detailing Brayton fraud*, attached to **Exhibit A**,

8  *Declaration of Michael J. Mandelbrot, dated March 12, 2014.* Sacks employment and any payments to

9  Sacks or Shephard Mullin are a sham and misappropriation of Trust funds and should be returned to the

10  Trust. Sacks is clearly a perjurer.

11      The following Table 1 summarizes the fraud, bad faith, and misappropriation of J.T. Thorpe, Inc.

12  Trust funds by the Trustees, Trust Advisory Committee Members, the Futures Representatives and each

13  of their extensive agents and attorneys. Table 2 summarizes the criminal and unethical conduct of the

14  Trust's actors.

15      **Table 1: Summary of Misappropriation of. Trust Funds due to Adverse Interests Criminal**

16  **Fraud, Bankruptcy Fraud, Bad Faith**

| Type of Misappropriation of Trust Funds | Amount Misappropriated from Claimants/Beneficiaries (dollars/est.) |
|---|---|
| Managing Trustee Stephen Snyder pays himself and his former firm (Brobeck) a "Special Bonus" (2004 Western Asbestos Annual Report) Snyder is simultaneously serving as the Executive Trustee of the J.T. Thorpe, Inc. Trust and the Chairman of the Brobeck Liquidation Committee creating a clear conflict of interest – See Exhibit C | $35,542,397 Western Trust $22,000,000 Thorpe Insulation Trust |
| Trust Advisory Committee Members Alan Brayton and David McClain are awarded improper and unlawful "Special Bonuses" – See Exhibit C | $12,300,000 Western Trust $16,500,000 J.T. Thorpe, Inc. Trust $5,000,000 Thorpe Insulation Trust |
| J.T. Thorpe, Inc. Trust creates a "Self Insured Retention" (Indemnity) fund due to the fraud of Trustees, Futures Representative, Trust Advisory Committee Members and its agents and attorneys (2004-2013 J.T. Thorpe, Inc. Annual Reports – see "Indemnity Fund – Self Insured Retention." | $5,000,000 J.T. Thorpe, Inc. $40,000,000 Western Asbestos |

| Type of Misappropriation of Trust Funds | Amount Misappropriated from Claimants/Beneficiaries (dollars/est.) |
| --- | --- |
| Futures Representative Attorney Gary Fergus (despite a known conflict and lack of "disinterest") is hired as the Attorney for the Futures Representative and misappropriates J.T. Thorpe, Inc. Trust funds each year as a "Significant Vendor" (see J.T. Thorpe, Inc. Annual Reports 2007-2013 under "Significant Vendors"). | $6,000,000 (at least $500,000 per year x 12 years) |
| Chuck LaGrave, former Brobeck attorney, is hired as both inside and outside counsel for the Trust despite conflicts of interest. LaGrave was not "disinterested" and committed extensive fraud (See Western Asbestos Annual Reports 2004-2013 under "significant vendor"). | $3,000,000 (at least $300,000 per year x 10 years) |
| Alan Brayton, Chairman of the Trust Advisory Committee of the J.T. Thorpe, Inc. Trust is paid in the Kananian default judgment and numerous other fraudulent defaults (see above). | $500,000 (at least, with the possibility of up to $100,000,000) - Western |
| All payments to Morgan, Lewis and Bockius from 2004-2013. Morgan, Lewis and Bockius is Snyder's former employer and a firm with a Conflict of Interest, a lack of "Disinterest" who has misappropriated extensive funds on bad faith lawsuits (Zurich and Mandelbrot). (See Western Asbestos Annual Reports 2004-2013.) | $20,000,000 (at least) - $2,000,000 per year x 10 years. |

**Table 2: Summary of Criminal and Unethical Conduct by the J.T. Thorpe, Inc. Trustees, Trust Advisory Committee Members, Futures Representative and their Attorneys and Professionals.**

| Individual Committing Criminal Bankruptcy Fraud and/or Unethical Conduct | Criminal and Ethical Conduct |
| --- | --- |
| Stephen Snyder, Managing Trustee | Bankruptcy Fraud 18 U.S.C. § 152-157; 11 U.S.C. § 104. 11 U.S.C. 326(d), 328. California Rule of Professional Conduct 3-310 Perjury |
| Alan Brayton, Chairman of the Trust Advisory Committee | Bankruptcy Fraud 18 U.S.C. § 152-157 California Rule of Professional Conduct 3-310 Perjury; Many others |
| Gary Fergus, Attorney for the Futures Representative | Bankruptcy Fraud 18 U.S.C. § 152-157; 11 U.S.C. § 328 California Rule of Professional Conduct 3-310 Perjury |
| David McClain, Trust Advisory Committee Member | Bankruptcy Fraud 18 U.S.C. § 152-157 California Rule of Professional Conduct 3-310 |

| Individual Committing Criminal Bankruptcy Fraud and/or Unethical Conduct | Criminal and Ethical Conduct |
|---|---|
| Sara Beth Brown, Executive Trustee | Bankruptcy Fraud 18 U.S.C. § 152-157<br>California Rule of Professional Conduct 3-310<br>Extensive Perjury |
| Laura Paul, Head of Claims Processing | Bankruptcy Fraud 18 U.S.C. § 152-157<br>Extensive Perjury |
| Benjamin Smith (Morgan Lewis and Bockius) | Bankruptcy Fraud 18 U.S.C. § 152-157; 11 U.S.C. 328<br>California Rule of Professional Conduct 3-310<br>Perjury |
| Steven Sacks (Shephard Mullin) | Bankruptcy Fraud 18 U.S.C. § 152-157<br>California Rule of Professional Conduct 3-310<br>Perjury |

*****

The Beneficiaries and Mandelbrot submit this Objection to the Annual Report and attached exhibits in order to demonstrate that the Trust, Trustees, Trust Advisory Committee Members and their respective Agents/Attorneys acted in bad faith, misappropriated millions of dollars, committed criminal bankruptcy fraud and their removal is necessary and a referral to the U.S. Attorney is appropriate. The Trust, by and through Managing Trustee Stephen Snyder and adverse attorneys and Fiduciaries Gary Fergus, Alan Brayton and David McClain have engaged in a pattern and practice of criminal fraud through conflicts of interest and bad faith. In addition, the Trust (from at least 2007 through 2013) has criminally concealed the extensive fraud committed by Trust Advisory Committee member Alan Brayton, including fraudulent defaults, misappropriations of funds and special bonuses and awards. In addition, this Court is urged to vacate any Judgments and Orders regarding Mandelbrot due to fraud, corruption and bad faith. This Court is urged to take appropriate action.

Dated: June __, 2014

/s/ _____
MICHAEL J. MANDELBROT
Attorney for Beneficiaries